UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTGAGETREE LENDING, INC., Plaintiff, v. MORTGAGE TREE FUNDING, INC., et al., Defendants. | 1: 05-CV-00278-OWW-SMS FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PLAINTIFF'S MOTION FOR COSTS AND ATTORNEY'S FEES (DOCS. 6-9) |

Plaintiff is proceeding with a civil action. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 72-302(c)(19).

Pending before the Court is Plaintiff's motion for default judgment in which Plaintiff seeks damages, injunctive relief, costs, and attorney's fees.

I. Background

On February 24, 2005, Plaintiff filed a complaint stating claims for 1) infringement of federally registered trademarks in violation of the Trademark Act of 1946, as amended, specifically 15 U.S.C. § 1114; 2) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); 3) trademark infringement in violation of California common law; and 4) unfair

competition and injury to business reputation, trade name and trademark in violation of California common law (Cal. Bus. & Prof. Code § 17200). The Clerk entered default as to Defendant Mortgage Tree Funding, Inc. (MTF), on June 6, 2005. Plaintiff filed the instant motions for entry of default judgment and for costs and attorney's fees on July 8, 11, and 18, 2005; supplemental briefing was filed on September 6, 2005, pursuant to the Court's order of August 9, 2005. Plaintiff's initially filed motion papers included the declaration of Robyn T. Callahan, and Plaintiff's supplemental brief contained an additional declaration of Callahan.

Plaintiff's motion for default judgment came on regularly for hearing on October 7, 2005, at 9:30 a.m. in Courtroom 4 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Robyn T. Callahan appeared on behalf of Plaintiff; thre was no appearance on behalf of Defendant. After argument, Plaintiff was given leave to file supplemental briefing and materials. On October 19, 2005, Plaintiff filed verbatim copies of the supplemental brief and declaration previously filed on September 6, 2005. The matter is now submitted to the Court.

II. Requirements for Entitlement to Default Judgment

A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where 1) the defendant has been served with the claim; 2) the defendant's default has been entered for failure to appear; 3) if the defendant has appeared in the action, the defendant has been served with written notice

of the application for judgment at least three days before the hearing on the application; and 4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed. R. Civ. P. 55(b); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). Factors that may be considered by courts in exercising discretion as to the entry or setting aside of a default judgment include the nature and extent of the delay, Draper v. Coombs, 792 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to the plaintiff, Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986); the merits of plaintiff's substantive claim, id.; the sufficiency of the allegations in the complaint to support judgment, Alan Neuman Productions, Inc., 862 F.2d at 1392; the amount in controversy, Eitel v. McCool, 782 F.2d at 1471-1472; the possibility of a dispute concerning material facts, id.; whether the default was due to excusable neglect, id.; and the strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, id.

A default judgment generally bars the defaulting party from disputing the facts alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state a claim. Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392. Thus, well pleaded factual allegations, except as to damages, are taken as true; however, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default. Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

A. Service

A California corporation is effectively served by personal service upon an authorized agent for service of process. Fed. R. Civ. P. 4(h), and (e)(1); Cal. Civ. Proc. Code §§ 415, 415.10, 416.10. A signed return or proof of service has been held to constitute prima facie evidence of valid service which can be overcome only by strong and convincing evidence. O'Brien v. R. J. O'Brien & Assocs., Inc., 998 F.2d 1394, 1398 (7th Cir. 1993).

Here, the declaration of service attached to the initial declaration of Callahan as Exhibit B establishes that Andrew Strachan, an adult, not a party to the case, and a registered California process server, served the summons and complaint and other associated documents on Defendant Mortgage Tree Funding, Inc. by serving its authorized agent at is business address on April 28, 2005, at 9:25 a.m. Thus, valid service on that date on Defendant has been established.

The Court notes that the docket does not reflect that Defendant ever responded to the complaint.

B. Notice

A defaulting party is entitled to written notice of the application for default judgment unless the party has not appeared in the action. Fed. R. Civ. P. 55(b)(2). An appearance for the purpose of Rule 55 need not be a formal one and may consist even of informal contacts made by the defaulting party where the defaulting party demonstrates a clear purpose to defend the suit. In re Roxford Foods v. Ford, 12 F.3d 875, 879-81 (9th Cir. 1993).

Here, Plaintiff's counsel declared that Defendant never

responded to a letter sent before the filing of the complaint, or to the complaint; and Defendant has not filed a responsive pleading or otherwise appeared in the above-referenced action. (Decl. at 3.) There is no indication in the file that the Defendant was ever given notice of the default or the application for default judgment. However, Plaintiff has demonstrated that the defaulting party has not appeared in the action and that notice is therefore not required.

C. Liability

Because claims that are legally insufficient are not established by a party's default, a court in considering an application for default judgment must determine whether the claims upon which a plaintiff seeks a default judgment are legally sufficient. It is the party's burden to demonstrate to the Court that under the pertinent law, the Plaintiff's claims, as alleged, are legally sufficient.

1. Trademark Infringement, 15 U.S.C. §1114(1)(a)

Preliminarily, this Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), which confers district court jurisdiction over all actions arising under the chapter regardless of amount in controversy, diversity of citizenship of the parties, or lack thereof.

As to the claim regarding infringement of a federally registered trademark, § 1114(a) provides that a person is liable in a civil action by a registrant of a registered mark for various remedies if the person, without the consent of the registrant, uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with

the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. It has been held that in order to prevail on such a claim, the Plaintiff must establish a protected interest in the thing infringed as well as a likelihood of consumer confusion; registration is prima facie evidence of a protected interest, and establishing that a substantial segment of consumers and potential consumers have mentally associated the mark and a single source of the product is also sufficient. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354-55 (9th Cir. 1985). Plaintiff has alleged that as a result of Plaintiff's exclusive and continuous use of the "Tree Brand" in United States commerce, consumers recognize and associate the services sold under the mark as originating from a single source. (Complt. at 3.)

The complaint alleges that Plaintiff has used a tree design for almost five years and owns the tree logo design pursuant to U.S. Registration No. 2645750; Plaintiff also has a pending application for the Tree Brand. The precise allegations of the complaint are as follows:

> MortgageTree Lending has used and has been affiliated with a tree design mark for almost five years. It is the owner of U.S. Registration No. 2645750 for its Tree design logo and also owns a pending U.S. Application for MORTGAGE TREE (collectively known as the "Tree Brand.")

(Complt. at 2.) The remainder of the operative allegations of the complaint concern the "Tree Brand," which includes the registered logo. Therefore, the registered mark appears to be included in each of the allegations concerning the "Tree Brand." It is alleged that the conglomerate "Tree Brand" has been used by

Defendant for its mortgage brokerage business operation, MortgageTree Funding, and thus in connection with advertising services, without Plaintiff's authorization or consent; and that the use is likely to cause confusion of deception among the public. (Id. at 2-3.) It thus appears that Plaintiff sufficiently alleged a violation of § 1114(1)(a).

3. Violation of § 1125(a)

As to Plaintiff's claim of false designation of origin and unfair competition, 15 U.S.C. § 1125(a) provides:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Plaintiff alleged that Defendant's use in commerce of the "Tree Brand," which had come to be associated in consumers' minds with a single source of origin, was a false designation of origin and unfair competition in violation of the statute. Plaintiff also alleged that the activities caused and will continue to cause great injury to Plaintiff. Plaintiff's allegations satisfy the requirement of the statute. Plaintiff's second claim has been

adequately pleaded.

4. Common Law Trademark Infringement

In its initial application, Plaintiff asserted that its claims were well-pleaded, including the allegation that Defendant intentionally and willfully violated common law trademark infringement. In the supplemental brief filed by Plaintiff, Plaintiff did not provide any authority regarding the legal sufficiency of its claim for judgment on the third cause of action in the complaint, namely, "Common Law Trademark Infringement," which contained an incorporation by reference of the previous allegations of the complaint, and allegations that such activities constituted "trademark infringement under the common law of the State of California." (Complt. at 5.)

At the hearing on the motion, Plaintiff withdrew its claim for common law trademark infringement.

4. Unfair Competition-Pendant State Claim

Plaintiff alleged in the fourth cause of action that the previously described conduct constituted unfair competition under the common law of the state of California. Plaintiff cited to authority to the effect that common law claims of unfair competition and actions pursuant to Cal. Bus. & Prof. Code § 17200 (defining unfair competition as including unlawful, unfair, or fraudulent business acts or practices) are "substantially congruent" to claims made under the Lanham Act. Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994). The Court further notes that it is established in California that if goods or services are known to the public by a name, design, or physical appearance, any imitation which has the effect of deceiving

buyers regarding the origin of the goods or services may be actionable as unfair competition. See 11 Witkin, Summary of California Law (9th Ed. 1990) at § 86. It appears that Plaintiff has adequately alleged a claim pursuant to Cal. Bus. & Prof. Code § 17200.

D. Other Factors

It does not appear that Defendant is an infant, incompetent, or member of the armed services. Defendant's delay has been long-standing, and it does not appear that there is any showing of excuse on the part of Defendant. This is tempered by the fact that Defendant was not given notice of the default or the application for default judgment. Nevertheless, no specific, real possibility of a dispute concerning material facts appears. Under the circumstances, it does not appear that judgment should be deferred in favor of a decision on the merits. The Court finds that entry of default judgment is appropriate.

III. Relief

A. Facts

Plaintiff has alleged upon information and belief that Defendant's infringing activities were willful, intentional, and undertaken unfairly and unjustly to benefit from the efforts of Plaintiff in promoting and selling services under the "Tree Brand." (Complt. at 3.) Plaintiff also alleged that the Defendant's activities have caused and continue to cause damage to Plaintiff, and that Defendant had actual knowledge of Plaintiff's use of the "Tree Brand." Counsel Robyn T. Callahan declares under penalty of perjury that Plaintiff was founded in 1986, is a nationally recognized mortgage banker, owns specific

registrations for its Tree design logo and a pending application for MORTGAGE TREE; and has used the tree design mark for almost five years. (Decl. at 3.) Callahan declares upon information and belief that Defendant operates a mortgage brokerage named Mortgage Tree Funding; Defendant has operated as a mortgage broker only since well after Plaintiff began using the "Tree Brand," and Defendant's activities were undertaken by Defendant without the authorization or consent of Plaintiff. (Decl. at 3.) Counsel details two letters, sent on October 12, 2004, December 16, 2004, informing Defendant of Plaintiff's registered trademark logo and pending application that had been approved for registration, strongly requesting Defendant to desist from using identical terms and highly similar marks, and informing Defendant of the legal bases for damages, injunctions, and attorneys fees that could result from its conduct. The letter sent in October is accompanied by proof of receipt. (Id., Ex. C.) The other letter is not; counsel declares only that Plaintiff wrote to Defendant through its outside counsel, and that a correct copy of the letter is attached; Defendant did not respond. (Decl. at 3.)

Although there is no reference to it in the declarations, Plaintiff's supplemental brief refers to Defendant's continuing its infringing actions as evidenced "by its active website at http://mtreefunding.com." (Supp. Brief at 8.) Plaintiff does not bother to point to any specific part or aspect of this website, let alone submit papers copies of any specific part as it existed at any specific time. Further, Plaintiff does not provide any material by way of declaration regarding matters of authentication, such as a statement by someone with personal

knowledge of who maintains the website, who authored the documents, or the accuracy of the contents. There is no background regarding the time period during which this site has existed.

Fed. R. Evid. 901 provides:

> (a) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what is proponent claims.

Unauthenticated evidence is not relevant. Authentication constitutes "a special aspect of relevancy." Fed. R. Evid. 901(a) advisory committee's note. Evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims. United States v. Branch, 970 F.2d 1368, 1370 (4th Cir. 1992). Authentication requirements are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims, Fed. R. Evid. 901(a). It is sufficient if there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be; thereafter, the question of weight to be given to the evidence is left to the finder of fact. United States v. Holmquist, 36 F.3d 154, 167 (1st Cir. 1994). Circumstantial evidence is sufficient to authenticate evidence. United States v. Englebrecht, 917 F.2d 376, 378 (8th Cir. 1990).

Information on internet sites presents special problems of authentication. A proponent should be able to show that the information was posted by the organization/s to which it is attributed. See Wady v. Provident Life and Accident Insurance Co.

of America, 216 F.Supp.2d 1060, 1064-65 (C.D.Cal. 2002); but see Moose Creek, Inc. v. Abercrombie & Fitch Co., 331 F.Supp.2d 1214, 1224-5 (C.D.Cal. 2004). It has been recognized that anyone with sufficient hacking ability can put anything on the internet; no web-site is monitored for accuracy, and nothing contained therein is subject to independent verification absent underlying documentation. Wady v. Provident Life and Accident Insurance Co. of America, 216 F.Supp.2d at 1064-65.

Here, there is no statement by a person with personal knowledge of who maintained the site, who authored the documents, or the accuracy of any of the contents at any specific time. It is unclear what person or entity posted the information. There is no showing that the internet site is secure from hackers or even secure within the allegedly posting organization. The only immediately apparent connections of the site to this action are the name of the posting entity (which mirrors that of the Defendant) and addresses within the organization that correspond to some extent with addresses of letters that counsel asserts were written to Defendant. Given the nature of the evidence, and considering the failure of Plaintiff to provide the Court with paper copies of specific parts of the site taken at a specific time and to provide any attempt at authentication, the Court concludes that neither the site, nor any specific version or aspect of the website, has been authenticated.

B. Damages

Plaintiff seeks the Court to award it "Defendant's profits from rendering mortgage brokerage services marketed, sold or offered using the 'Tree Brand', together with such increased sum

in addition thereto as the Court shall find just in view of the willful nature of Defendant's infringing and tortious acts." (Decl. at 4.) Plaintiff further seeks the Court to award Plaintiff "its damages arising out of Defendant's infringing acts, in an amount which is three times the amount found as actual damages." (Id.; Application at 5-6.) Reference to the complaint reveals that with respect to damages, Plaintiff sought an award of Plaintiff's damages "arising out of Defendant's infringing acts, in an amount which is three times the amount found as actual damages," as well as an order that Defendant

> account to MortgageTree Lending for, and that MortgageTree Lending be awarded Defendant's profits from rendering mortgage brokerage services marketed, sold or offered using the "Tree Brand", together with such increased sum in addition thereto as the Court shall find just in view of the willful nature of Defendant's infringing and tortious acts.

(Complt. at 6-7.)

There is no proof of the amount of profits set forth in the materials submitted to the Court. However, the complaint's reference to an additional sum for wilful conduct is reasonably interpreted as a request for statutory damages for wilful conduct. Indeed, in the supplemental brief submitted in support of default judgment, Plaintiff reveals that what it actually seeks is statutory damages pursuant to 15 U.S.C. § 1117(c)(1), which provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or

> distribution of goods or services in the amount of–
>
> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

Reference to § 1116(d)(1)(B) shows that a counterfeit mark is defined as follows:

> As used in this subsection the term "counterfeit mark" means--
>
> (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
>
> (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36;
>
> but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

Given that the complaint, in describing the conduct of the Defendant that gave rise to liability, contains allegations that Defendant made unauthorized use, in selling and promoting services, of a registered tree logo and a brand for which registration is pending notwithstanding Defendant's actual knowledge of Plaintiff's use of the brand, it is concluded that it has been established that the case involves the use of a counterfeit mark in connection with the offering or distribution of services.

As to wilfulness, wilfulness has been interpreted to involve

a deliberate duplication of a mark in a way calculated to obtain benefit from the plaintiff's goodwill, or with deliberate intent to deceive. Rolex Watch U.S.A., Inc. v. Meece, 158 F.3d 816, 823 (5th Cir. 1998) (quoting Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir. 1993)); SecuraComm Consulting Inc. v. Securacom Inc., 166 F.3d 182, 187 (3d Cir. 1999). The allegations of the complaint establish that Defendant had actual knowledge of Plaintiff's use of the tree brand, and that Plaintiff wrote Defendant in October and December 2004, requesting it to cease and desist its use of the brand; Defendant did not respond. Wilfulness may be inferred from continuing use after having been presented with a cease and desist demand. Discovery Communications, Inc. v. Animal Planet, Inc., 172 F.Supp.2d 1282, 1291-92 (C.D.Cal.2001); Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F.Supp.2d 567, 583 (E.D.Pa 2002).

As to the amount of damages for wilful use of the counterfeit mark, courts have analogized to the body of case law interpreting a similar provision in the Copyright Act. Phillip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501 (C.D.Cal. 2003). This involves consideration not only of compensation for the injured plaintiff, but also deterrence of future infringement. Id. This is consistent with established understanding in the Ninth Circuit of the policies underlying trademark protection, namely, to protect consumers from being misled as to the enterprise from which the goods or services emanate or with which they are associated, to prevent impairment of the value of the enterprise that owns the trademark, and to achieve these ends in a manner consistent with the objectives of

free competition. See Intel Corp. v. Terabyte International, Inc., 6 F.3d 614, 618 (9th Cir. 1993.) Copyright factors include the defendant's profits and saved expenses, the plaintiff's lost revenues, and the defendant's state of mind. Louis Vuitton Malletier and Oakley, Inc. v. Weit, 211 F.Supp.2d 567, 584 (E.D.Pa 2002).

Here, profits, expenses, and lost revenues are matters only of speculation. The precise scope of Defendant's business is not clear. All that the allegations of the complaint indicate is that the Defendant used a counterfeit mark in the same type of business beginning well after five years ago, when Plaintiff started using it and amassing substantial goodwill in a business that has grown to over fifty branches; Defendant did so wilfully, intentionally, and with a purpose unjustly to benefit from the efforts of Plaintiff in promoting and selling services. Specific evidence of wilfulness includes the failure to respond to requests to cease and desist in late 2004, and a failure to respond to the complaint. The complaint does not allege specifically when Defendant obtained knowledge of the registration of the mark, but it may reasonably be inferred that it occurred by the time of the delivery of the letter in late 2004. At least by that time, Plaintiff had notified Defendant that its mark was registered. See § 1111 (providing that no damages shall be recovered against an infringer of a registered mark unless the defendant had actual notice of the registration). Plaintiff did not serve Defendant with notice of the default or notice of the application to enter default judgment.

Under the circumstances, the Court concludes that because

there is some evidence that the use of the confusing mark was wilful, even in the absence of evidence of the extent of Plaintiff's loss or the Defendant's profits, it is appropriate to award damages for the purpose of deterrence. Because of the scope of Plaintiff's operation as alleged in the complaint, a significant interest in deterrence is presented. There is no detailed evidence regarding the nature or quality of the respective services offered by Plaintiff and Defendant; nevertheless, because of the likelihood of confusion established by Defendant's default, the circumstances necessarily demonstrate an interest in the protection of the public. It further appears that only one counterfeit mark per type of goods or services sold has been demonstrated.

Plaintiff seeks $50,000 under § 1117(c)(1) and $200,000 under § 1117(c)(2). This is not a case in which the defendant has been shown to have engaged in selling counterfeit goods, using the internet over a long period of time to infringe multiple trademarks, importing millions of infringing products, or unjustly gaining huge amounts of profits. It may thus be distinguished from the cases cited by Plaintiff, such as Louis Vuitton ($1,500,000 for eight marks, use of multiple domain names on the internet, and egregious conduct of extensive sales of many types of goods for a long period of time); Petmed Express, Inc. v. Medpets.Com, Inc., 336 F.Supp.2d 1213, 1221 (S.D.Fla 2004) ($400,000 for each infringing mark used on the internet plus $50,000 for each infringing domain name, based on wilfulness and the presumptively high scope of internet sales); and Playboy Enter., Inc. v. AsiaFocus Int'l, Inc., 1998 WL 724000 (E.D.Va

1998) ($1,000,000 for wilful infringement of two counterfeit domain names, and $500,000 for each category of merchandise, where there was extensive use of multiple sites for sale of Playboy merchandise as well as viewing of photographic images, use of registered trademarks within the named sites and in e-mail addresses, and active encouragement of other web sites to distribute the infringing material); see also Philip Morris USA Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501-02 (C.D. 2003) (award of $2,000,000 for wilful infringement of two famous Marlboro trademarks by sale of 8,000,000 imported counterfeit cigarettes of inferior quality with a street value of millions of dollars). Given that the only probative evidence available to the Court in the present case demonstrates wilful conduct of relatively short duration and of uncertain extent or effect, the Court finds appropriate an award of $50,000.00 in damages pursuant to 15 U.S.C. § 1117(c)(1).

C. Injunctive Relief

Title 15 § 1116(a) provides:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United

> States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

It is appropriate to award injunctive relief in connection with a default judgment pursuant to the Lanham Act. Philip Morris USA Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 502 (C.D.Cal. 2003) (finding permanent injunctive relief appropriate because the claims otherwise warranted an injunction, the defendant had chosen to ignore the lawsuit, and failure to grant the injunction would needlessly expose the plaintiff to the risk of continuing irreparable harm); Pepsico, Inc. v. California Security Cans, 238 F.Supp.2d 1172, 1177-78 (C.D. 2002) (granting an injunction barring use of a trademark on counterfeit products where it was consistent with the relief requested in the complaint, and it was not absolutely clear that the wrongful behavior had ceased and would not begin again).

An injunction is an equitable remedy appropriate where there is irreparable injury and inadequacy of legal remedies; the Court will balance the competing claims and consider the potential injury and convenience to each party of granting or withholding the injunctive relief, as well as consider the public interest. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-13 (1982).

The Lanham Act gives courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a registrant's rights. 15 U.S.C. § 1116(a). A plaintiff is not automatically entitled to an injunction simply because it proved

its affirmative claims; the grant of injunctive relief is not a ministerial act flowing as a matter of course. Pyrodyne Corp. v. Pyrotronics Corp., 847 F.2d 1398, 1402 (9th Cir. 1988). However, the owner of a registered mark is generally entitled to injunctive relief because there is no adequate remedy at law for the injury caused by a defendant's continuing infringement. See Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir. 1988); see Lone Star Steakhouse & Saloon v. Alpha of Va., Inc., 43 F.3d 922, 939 (4th Cir. 1995). Demonstrating a likelihood of confusion is generally sufficient in trademark infringement or unfair competition cases to permit a presumption that the plaintiff will suffer irreparable harm. Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n. 3 (9th Cir. 1989). Denying injunctive relief would force Plaintiff to endure continuing infringement and to bring successive suits for money damages. Further, there is a strong interest in protecting consumers. In cases where the infringing use is for a similar service, broad injunctions are especially appropriate. Century 21 Real Estate Corp. v. Sandlin, 846 F.2d at 1180-81.

Plaintiff alleged in the complaint that Defendant's unlawful acts have had and will continue to have an effect in this judicial district; the trademark has amassed substantial goodwill inuring to the benefit of Plaintiff; Defendant's unlawful and infringing activities have caused and continue to cause damage to Plaintiff (Cmplt. at 2-3); Defendant's use of the brand has caused and will continue to cause great and irreparable injury to Plaintiff, and unless such acts are restrained by the Court, they will be continued, and Plaintiff will continue to suffer great

and irreparable injury; and Plaintiff has no adequate remedy at law. (Complt at 4-5.)

Here, the Court finds that Plaintiff has established that it is the owner of a registered trade mark with respect to its tree design logo (U.S. Registration No. 2645750) and the owner of a pending U.S. application for MORTGAGE TREE (collectively known as the "Tree Brand"). Defendant engaged in trademark infringement of this brand and continues to do so in its unauthorized use of the Tree Brand in connection with mortgage brokerage services. Defendant's infringement was wilful. The Court finds that Plaintiff is entitled to permanent injunctive relief against future infringement of its mark by Defendant because Plaintiff has established a likelihood of confusion if Defendant continues to use Plaintiff's mark, has established substantial good will based on the association of the mark with Plaintiff's operations, has shown that irreparable harm will result absent such relief, and finally has shown that a permanent injunction will serve the public interest. Further, the Court finds that with respect to the relative hardships imposed by an injunction, the balance tips in favor of issuance. Plaintiff is only seeking to enjoin illegal activity. The injunction will not adversely affect any of Defendant's legitimate business operations, nor will it suffer any cognizable hardship as a result of its issuance. Conversely, Plaintiff will suffer harm in the form of disfavor from clients if Defendant's activities continue. The Court further finds that injunctive relief would serve the public interest because the pertinent law protects not only the private interests of the trademark owner, but also the public's interest in not being

confused by the infringing products. The Court finds that the injunction would deter future infringement.

Further, § 1116(a) provides that any injunction may include a provision directing the defendant to file with the Court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

Accordingly, if the Court were authorized to enforce an injunction, the Court would recommend that it be ordered that Defendant Mortgage Tree Funding, Inc., and its officers, directors, agents, servants, employees, attorneys and those persons in active concert or participation or otherwise in privity with it, be permanently enjoined and restrained

(1) from using in any manner, in connection with the advertising, promotion, marketing, sale, offer for sale or rendering of mortgage brokerage services, MortgageTree Lending's "Tree Brand"; and

(2) from using in any manner, in connection with the advertising, promotion, marketing, sale, offer, or rendering of mortgage brokerage services, any false designations of origin, or false representations, or otherwise commit any acts of trademark infringement, unfair competition or deceptive or unlawful trade practices, which may cause the trade or public to mistakenly believe that Defendants' services are related to, affiliated, associated or connected with, or sponsored or approved by Plaintiff, or from doing any other act which may, or

is intended, designed or calculated to, injure MortgageTree Lending's business reputation or dilute, tarnish or disparage the "Tree Brand"; and

(3) that it be ordered that Defendant file with the Court and serve upon MortgageTree Lending within 30 days after service upon Defendant of this Court's injunction issued in this action, a written report, signed under oath, setting forth in detail the manner in which Defendant has complied with such injunction.

However, the Court notes that because Defendant has not been given notice of this hearing, it appears that any injunction emanating from the Court cannot come within the provision of § 1116(a), which permits enforcement by contempt "or otherwise", but which appears to limit such enforcement to injunctions granted "upon hearing, after notice to the defendant, by any district court of the United States...." At hearing Plaintiff asserted that because Plaintiff gave Defendant notice of the possibility of injunctive relief in a letter before the commencement of suit, Defendant had notice within the meaning of § 1116(a); however, Plaintiff has not submitted any authority to that effect, and the Court is aware of no authority to the effect that the notice contemplated by § 1116(a) is anything other than notice that particular injunctive relief will be sought at a hearing following the notice of such hearing. See In re Lorillard Tobacco Co., 370 F.3d 982, 986 (9th Cir. 2004) (noting that an ex part seizure order under § 1116 is not the same as an injunction under § 1116, which requires notice and hearing in order to be enforceable by contempt). Because of the lack of notice to the Defendant of the terms of the injunction sought and of the

hearing thereon, it would appear that any injunction granted would not be capable of enforcement. The Court will not order an injunction when it is a futility. In re Estate of Ferdinand Marcos Human Rights Litigation, 94 F.3d 539, 545 (9th Cir. 1996). Plaintiff has not established that any injunction issued in this proceeding, of which no notice was given, is capable of enforcement by the Court. Accordingly, the Court concludes that Plaintiff has not established entitlement to injunctive relief.

D. Attorney's Fees

Plaintiff seeks $8,310.63 in attorney's fees pursuant to Fed. R. Civ. P. 55(d) and Local Rule 54-293 for work done on the case from November 2004 through June 2005 in connection with preparation of the initial application and motion for attorney's fees. Plaintiff also seeks an additional $4,125.00 for fifteen hours of additional work at a rate of $275.00 per hour, consisting of eight hours of reviewing and researching case law and statutory authority for the supplemental brief, and seven further hours for travel to and from Fresno and for appearance at the hearing of the motion. The total claimed is thus $12,435.63.

Plaintiff initially requested fees pursuant to Fed. R. Civ. P. 55(d) (which says nothing regarding an award of costs or fees) and Local Rule 54-293. No substantive basis for an award of fees was referred to in the application. Subsequently Plaintiff identified 15 U.S.C. § 1117(a) as the source of the Court's statutory authority to award fees and costs. Section 1117(a) concerns violations of any right of a registrant of a mark or a violation under § 1125(a) that has been established in a civil action. It states in pertinent part, "The court in exceptional

cases may award reasonable attorney fees to the prevailing party." Exceptional cases includes cases in which trademark infringement is malicious, fraudulent, deliberate, or wilful. Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993); Philip Morris USA Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 502 (C.D.Cal.2003). To determine a reasonable attorney fee award under § 1117(a), courts employ the lodestar method. See, Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1219 (9th Cir. 2003).

Case law construing what a reasonable fee is applies uniformly to all federal fee-shifting statutes. City of Burlington v. Dague, 505 U.S. 557, 561 (1992). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This figure, the "lodestar," is presumed to be the reasonable fee contemplated by the statute. City of Riverside v. Rivera, 477 U.S. 560, 568 (1986). Factors to consider in the initial lodestar calculation are the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained, and the superior performance of counsel. Blum v. Stenson, 465 U.S. 886, 898-900 (1984). Local Rule 54-293 also sets forth the procedure to be followed, the matters to be shown by an applicant, and the criteria to be followed in making awards.

Here, Plaintiff does not request fees for a specified number of hours. Reference to the billing statements attached to counsel's declaration (Ex. E) reveals that 24.80 hours of

attorney time was the total number of hours claimed by various counsel for services including research and investigation regarding Defendant's corporate status, correspondence with the client and with Defendant, reviewing the file, drafting and filing the complaint and related documents, and research regarding service, preparation of request for entry of default, and the application for default judgment. The Court notes that some of the services, including telephone conferences with the Court regarding payment of filing fees and issuance of subpoenae, confirming the filing of the complaint, and checking with the Court regarding the status of the order on entry of default, consisting of approximately an hour and one-half, are clerical or paralegal in nature and are not worthy of compensation at a rate for attorney time. See, Missouri v. Jenkins, 491 U.S. 274, 285-89 (1989). The Court finds that twenty-three hours of attorney time for the attorney tasks described hereinabove are reasonable.

As to the supplemental brief, the Court requested briefing on the legal sufficiency of the claims pleaded and authority regarding entitlement to the relief requested. In response, Plaintiff filed authority regarding the Court's discretion to enter default. The Court did not solicit the submission of legal points and authorities on these general matters. As to the matters regarding which briefing was directed, and specifically the legal sufficiency of the multiple claims that Plaintiff had pleaded, Plaintiff cited only one case, and that was cited only in reference to an assertion that California claims of unfair competition were substantially congruent to claims made under the Lanham Act. There was no citation of authority regarding, or

setting forth of, the elements of the California claims or the terms of the California statutes. There was no specific reference to the common law trademark infringement law at all. With respect to the federal claims pled, Plaintiff merely cited to the statutes in question, parroting the statutory language. With respect to the law regarding the remedies Plaintiff sought, Plaintiff cited no cases regarding entitlement to or scope of injunctive relief, but rather merely cited to the federal statute. Plaintiff did not brief the question of enforcement of an injunction issued without notice to the defendant. Seven cases were cited on various subpoints concerning statutory damages, most of which were from outside this circuit. No discernible, rational argument was set forth with respect to how the Court should determine damages in the instant case aside from Plaintiff's belief as to what was appropriate, which in turn was based on evidence which Plaintiff did not even attempt adequately to identify or authenticate (evidence that would have been associated with the internet site address briefly referred to in the supplemental brief, but not in any evidentiary document).

The Court notes that it has already included in the sum of reasonable hours 9.10 hours for previous work on the default, including obtaining of injunctive relief, research regarding entry of default and default judgment by the Court, and preparation of papers to obtain default and default judgment--all separate and apart from any preparation of the motion for attorney's fees. The Court finds that a claim of eight additional hours for the work represented by the supplemental brief and declaration is patently excessive and unreasonable. At most four

hours more hours should be granted, and this is generous. Thus, eleven additional hours for the supplemental brief, declaration, and estimated travel time and time for appearance at the hearing is reasonable.

The Court finds that a reasonable number of hours for all the tasks billed is 34 total hours.

As to the reasonable hourly rate, a district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984). Either current or historical rates prevailing rates may be used; use of current rates or an appropriate adjustment for delay in payment may be reasonable. Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989).

Here, Plaintiff does not total the various hours performed by each attorney in the case; Plaintiff only submits a billing sheet that is chronologically organized. Counsel in the case, who practice in a law firm in San Francisco, have varying levels of experience and various hourly rates: $500 per hour (Bailey-Wells, managing partner, fifteen years' experience), $425 (Cohen, partner, twelve years' experience), $425 (Wheble, partner, fifteen years' experience), and $275 (Callahan, associate, three years' experience). The Court will not pick through the chronological billing sheet unaided by counsel; however, it appears that slightly over half of the hours were completed by the associate, and less than half by more experienced counsel. It appears that an average of $360 per hour is a reasonable prevailing rate in the community for the services rendered in

this case in light of the nature of the case, the skill and experience of counsel, and the ability reflected in the quality of the work.

Accordingly, the Court finds that counsel should be awarded $12,240.00 in attorney's fees.

E. Costs

Plaintiff seeks $1,212.70 in costs, consisting of various items, and cites no authority other than the statute in support of this request.

Title 15 U.S.C. § 1117(a) provides that when a violation of any right of a registrant of a mark or a violation under § 1125(a) has been established in a civil action, the plaintiff shall be entitled, subject to sections 1111 (requiring display of a registration symbol, or actual notice of registration, in order to recover damages) and 1114 (limitations on relief in situations involving printers or advertisers), and subject to the principles of equity, to recover the costs of the action. The term "costs of the action," which appears in numerous federal statutes, has been interpreted to authorize the costs recoverable under §§ 1920, 1821, and other such provisions. Agredano v. Mutual of Omaha Companies, 75 F.3d 541, 544 (9th Cir. 1996) (where the term was unadorned by any modifier such as "reasonable" or necessary"). However, it has been held that the Lanham Act authorizes awards of investigative costs as an adjunct to a reasonable attorney's fee (a term used both in § 1117(b) and § 1117(a)). Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir. 1997). Further, recovery of expenses for things such as travel, telephone, mailing, duplication, and the cost of computerized legal research

services has been permitted as reasonable expenses incidental to an award of attorney's fees. Ford Motor Co. v. Kuan Tong Industrial Co., Ltd., 697 F.Supp. 1108, 1110-11 (N.D.Cal. 1987).

Plaintiff's billing sheet reveals costs of filing fees, and expenses of telephone calls, investigation, postage, copying, data base and legal research fees, and courier fees. Under fee-shifting statutes, out-of-pocket expenses appropriate to the specific litigation and normally billed to a paying client will be reimbursed even though they may not be taxed as costs. Harris v. Marhoefer, 24 F.3d 16, 19-20 (9th Cir. 1994). However, the Court disallows a claim for $149.18 in word processing fees because it is not clear what such expenses represent or that they are anything other than normal overhead expense associated with doing business and customarily absorbed as the cost of maintaining an office.

Accordingly, the Court recommends an allowance of $1,063.52 in costs and expenses.

RECOMMENDATION

Accordingly, it IS RECOMMENDED THAT

1) Plaintiff's application for default judgment BE GRANTED in part on Plaintiff's first, second, and fourth causes of action; and

2) The Clerk BE DIRECTED TO ENTER DEFAULT JUDGMENT for Plaintiff MortgageTree Lending, Inc., and against Defendant Mortgage Tree Funding, Inc., as follows:

a) Pursuant to 15 U.S.C. § 1117(c)(1), statutory damages in the amount of $50,000.00; and

b) Pursuant to 15 U.S.C. § 1117(a), attorney's fees in

the amount of $12,240.00; and

c) Pursuant to 15 U.S.C. § 1117(a), $1,063.52 in costs and expenses.

This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: November 21, 2005** **/s/ Sandra M. Snyder**
icido3 UNITED STATES MAGISTRATE JUDGE